United States District Court
Southern District of Texas
**ENTERED**
November 08, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re PLAINS ALL AMERICAN DERIVATIVE LITIGATION § § § | | CIVIL ACTION NO. H-15-3632 |
| This Document Relates To: § § ALL ACTIONS § § | | (Consolidated with Civil Action No. H-16-0429) |

### MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motions to Dismiss Pursuant to Mandatory Forum Selection Clause and for Failure to State a Claim ("Defendants' Motion to Dismiss") (Docket Entry No. 33). For the reasons stated below, Defendants' motion will be granted pursuant to the Forum Selection Clause.

### I. Factual and Procedural Background

Plaintiffs filed independent unitholder derivative actions related to a May 2015 oil spill on behalf of Plains All American Pipeline, L.P. ("Plains"). On May 31, 2016, this court consolidated the actions. Plaintiffs jointly filed their Verified Consolidated Unitholder Derivative Complaint (the "Amended Complaint") (Docket Entry No. 32) on July 25, 2016.

Plains is a Delaware master limited partnership ("MLP") headquartered in Houston, Texas. The general partner of Plains is PAA GP, LLC (the "General Partner"). The sole member of the General Partner is Plains AAP, L.P., whose general partner is

Plains All American GP LLC ("Plains GP"). Plains GP's officers and directors manage Plains.

As an MLP, the rights of Plains' unitholders are currently governed by the Fifth Amended and Restated Agreement of Limited Partnership of Plains All American Pipeline, L.P. ("the Agreement") and the Delaware Revised Uniform Limited Partnership Act (the "Delaware LP Act"), 6 Del. C. § 17-1101, et seq. In May of 2015 the Agreement was amended to include the following forum-selection clause (the "Forum-Selection Clause" or "the Clause"):

> (b) Each of the Partners and each Person holding any beneficial interest in the Partnership (whether through a broker, dealer, bank, trust company or clearing corporation or an agent of any of the foregoing or otherwise):
>
> > (i) irrevocably agrees that any claims, suits, actions or proceedings (A) arising out of or relating in any way to this Agreement . . . , (B) brought in a derivative manner on behalf of the Partnership, (C) asserting a claim of breach of a fiduciary duty owed by any director, officer, or other employee of the Partnership or the General Partner, or owed by the General Partner, to the Partnership or the Partners, (D) asserting a claim arising pursuant to any provision of the Delaware Act or (E) asserting a claim governed by the internal affairs doctrine shall be exclusively brought in the Court of Chancery of the State of Delaware (or, if such court does not have subject matter jurisdiction thereof, any other court located in the State of Delaware with subject matter jurisdiction), in each case regardless of whether such claims, suits, actions or proceedings sound in contract, tort, fraud or otherwise, are based on common law, statutory, equitable, legal or other grounds, or are derivative or direct claims;
> >
> > (ii) irrevocably submits to the exclusive jurisdiction of the Court of Chancery of the State of Delaware . . . in connection with any such claim, suit, action or proceeding;

>>(iii) agrees not to, and waives any right to, assert in any such claim, suit, action or proceeding that (A) it is not personally subject to the jurisdiction of the Court of Chancery of the State of Delaware or of any other court to which proceedings in the Court of Chancery of the State of Delaware may be appealed, (B) such claim, suit, action or proceeding is brought in an inconvenient forum, or (C) the venue of such claim, suit, action or proceeding is improper;

(Agreement, Exhibit 1 to Defendants' Motion to Dismiss, Docket Entry No. 33-1, p. 67)

On May 19, 2015, one of Plains' pipelines, Line 901, began to leak oil, resulting in the spill of 3,400 barrels of oil into the coastal area around Santa Barbara, California. Plaintiffs allege that the leak was the result of Defendants' mismanagement of Plains. Plaintiffs allege that Plains GP breached the Partnership Agreement's "best interest" provision and the implied covenant of good faith and fair dealing. One of the Plaintiffs also alleges that Plains GP's officers and directors breached common law fiduciary duties.

## II. Analysis

### A. Applicable Law

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 580 (2013). "[C]ourts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way

that they evaluate a forum-selection clause pointing to a federal forum." Id. (citations omitted). "Usually, a court applying that doctrine must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." Barnett v. DynCorp International, L.L.C., 831 F.3d 296, 300 (5th Cir. 2016) (citation omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atlantic Marine, 134 S. Ct. at 581 (quoting Stewart Organization, Inc. v. Ricoh Corp., 108 S. Ct. 2239, 2245 (1988)). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. (quoting Stewart, 108 S. Ct. at 2246 (KENNEDY, J., concurring)). "Forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 114 (5th Cir. 1996) (quoting M/S Bremen v. Zapata Off-Shore Co., 92 S. Ct. 1907, 1913 (1972)). "In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." Atlantic Marine, 134 S. Ct. at 583.

The presence of a valid forum-selection clause requires district courts to disregard the parties' private interests.

-4-

Butorin on behalf of KBR Inc. v. Blount, 106 F. Supp. 3d 833, 836-37 (S.D. Tex. 2015) (citing Atlantic Marine, 134 S. Ct. at 581, 582). The public interest factors a court must consider include: "(a) administrative difficulties flowing from court congestion; (b) local interest in having localized controversies decided at home; (c) interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (d) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (e) the unfairness of burdening citizens in an unrelated forum with jury duty." Id. at 837 (citing Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 258 n.6 (1981).

## B. Analysis

Defendants moved to dismiss pursuant to a forum-selection clause governing derivative actions and under Rule 12(b)(6) for failure to state a claim for which relief may be granted. Because the court concludes that the Forum-Selection Clause is enforceable, it does not reach Defendants' Rule 12(b)(6) arguments.

Plaintiffs make three arguments in opposition to Defendants' Motion to Dismiss. First, Plaintiffs challenge the procedural mechanism under which the motion was brought. Second, Plaintiffs argue that the Forum-Selection Clause is unenforceable because of its unilateral adoption and because of the timing of its adoption.

### 1. Procedural Mechanism

Plaintiffs argue that Defendants' "attempt to invoke the enforcement of the Clause via Rule 12 is improper and should be

rejected."[1] Plaintiffs correctly point out that the Supreme Court has rejected Rule 12(b)(3) as a basis for dismissing an action pursuant to a forum-selection clause. Atlantic Marine, 134 S. Ct. at 574. But Defendants do not invoke Rule 12(b)(3). Although Defendants style their motion as a Rule 12(b) motion, their argument for dismissal pursuant to the Clause relies on the standard adopted in Atlantic Marine.[2] The court concludes that there is no procedural defect in Defendants' motion and will apply the appropriate forum non conveniens analysis upon determining that the Clause is enforceable.

2. Enforceability of the Clause

Plaintiffs argue that enforcing the Forum-Selection Clause would go against federal common law and "time-honored" contract principles. Plaintiffs are correct that federal law determines the enforceability of a forum-selection clause. But they overlook "the general principle that outside narrow areas of federal interest, '[t]here is no federal common law of contracts.'" Barnett, 831 F.3d at 302 (quoting Ford v. Hamilton Investments, Inc., 29 F.3d 255, 258 (6th Cir. 1994)). The federal law governing the enforceability of forum-selection clauses is not "time-honored" contract principles but a four-factor analysis provided by the

---

[1]Plaintiffs' Opposition to Defendants' Motions to Dismiss Pursuant to Mandatory Forum Selection Clause and for Failure to State a Claim ("Plaintiffs' Response"), Docket Entry No. 34, p. 17.

[2]Defendants' Motion to Dismiss, Docket Entry No. 33, p. 15.

-6-

Supreme Court. See Carnival Cruise Lines, Inc. v. Shute, 111 S. Ct. 1522, (1991); M/S Bremen, 92 S. Ct. at 1907. The law

> requires a party attacking a forum-selection clause to overcome a presumption of enforceability by showing that the clause is "'unreasonable' under the circumstances" because
>
> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

Barnett, 831 F.3d at 301 (quoting Haynsworth v. The Corporation, 121 F.3d 956, 963 (5th Cir. 1997)).

Plaintiffs do not argue that the designated forum or applicable law is unfair and make only a passing and conclusory reference to Texas public policy.[3] The court is thus left to determine whether Plaintiffs have shown that the incorporation of the Forum-Selection Clause into the partnership agreement was the product of fraud or overreaching as a result of the Clause's unilateral adoption or the timing of its adoption.

  a. Unilateral Adoption

Plaintiffs argue that the Forum-Selection Clause is unenforceable because it was unilaterally added to the Agreement via amendment.[4] Plaintiffs do not argue that the amendment was

---

[3] Plaintiffs' Response, Docket Entry No. 34, p. 21.

[4] Id. at 17-20.

invalid or that they had no notice that Defendants were permitted to amend the Agreement unilaterally. Instead, in support of their position, Plaintiffs cite to a California district court case, Galaviz v. Berg, 763 F. Supp. 2d 1170 (N.D. Cal. 2011). The court in Galaviz denied a motion to dismiss pursuant to a unilaterally adopted forum-selection clause. Id. at 1175. The defendants in Galaviz amended their corporate bylaws to include a forum-selection clause after the plaintiff-shareholders had acquired their shares. Id. at 1172. In its analysis, the court focused on the lack of bilateral agreement to the amended bylaws instead of whether the plaintiffs prospectively agreed to be subject to unilateral amendment. Id. at 1174-75. Because the court in Galaviz did not address the issue of prospective consent to unilateral amendment, its analysis is inapposite.

Two subsequent district court cases enforced forum-selection clauses that were adopted unilaterally via amended corporate bylaws. Butorin, 106 F. Supp. 3d at 833; North v. McNamara, 47 F. Supp. 3d 635 (S.D. Ohio 2014). In those cases the courts reasoned that the presence of a bylaw allowing for unilateral amendment provided notice to shareholders that the bylaws could be amended without further notice or input. Butorin, 106 F. Supp. 3d at 842; North, 47 F. Supp. 3d at 642-43. As the court in North put it, the "fact that the shareholders are unsatisfied with the consequences of the application of the terms to which they agreed [when purchasing the stock] is an insufficient basis upon which to

find the bylaw so inequitable that it should not be enforced." 47 F. Supp. 3d at 643.

The court finds the reasoning in <u>Butorin</u> and <u>North</u> persuasive. Plaintiffs were on notice that Defendants could amend the Agreement unilaterally at any time. Defendants' partnership Agreement contained provisions for unilateral amendment similar to the bylaws in those cases, and Plaintiffs cite no authority to suggest that they should be treated differently.

      b.   Timing of the Adoption

Plaintiffs argue that the Clause is unenforceable because Defendants adopted it after the alleged wrongdoing had commenced. In support of their argument Plaintiffs cite a New York district court case, <u>In re Facebook, Inc.</u>, 922 F. Supp. 2d 445 (S.D.N.Y. 2013).

The court in <u>In re Facebook</u> declined to enforce a forum-selection clause adopted after the defendant's initial public offering ("IPO") in an action for alleged wrongdoing that occurred prior to the IPO. <u>Id.</u> at 463. The court focused its analysis on the fact that the forum-selection clause did not take effect until after the claims in the case arose. <u>Id.</u>

Subsequent cases have reasoned that the relevant timing inquiry is when plaintiffs had notice that they were subject to unilateral amendment. <u>See</u> <u>Butorin</u>, 106 F. Supp. 3d at 842 ("The certificate of incorporation that empowered the board to unilaterally change the bylaws had been in effect . . . . So,

-9-

[Plaintiff] cannot argue that he was not on notice . . ."); see also North, 47 F. Supp. 3d at 644 ("Upon considering the issue, the Court concludes that the forum-selection bylaw does not become unenforceable simply because it was adopted after the purported wrongdoing.").

For the reasons discussed above, this court agrees with the courts in North and Butorin. Defendants argue, and Plaintiffs do not dispute, that unilateral amendment was available to Defendants at the time Plaintiffs purchased their units. Plaintiffs were on notice that the Agreement could be amended unilaterally when they acquired their units. Thus, the timing of the alleged wrongdoing does not render the Forum-Selection Clause unenforceable.

3.  Forum Non Conveniens Analysis

The remaining inquiry is whether, despite the enforceable Forum-Selection Clause, public interest factors weigh against dismissal.

The first factor concerns administrative difficulties resulting from court congestion. Neither party has argued and the court finds no indication that congestion in Delaware state courts would prohibit them from adjudicating this matter. The first factor thus has no weight.

The second factor involves the interest in having localized controversies decided at home. Plains has its principal executive offices in Houston, Texas, and most of the other defendants are allegedly residents of Texas. But the spill giving rise to this

suit happened in California, and other affected unitholders may reside elsewhere. Because this controversy is not entirely localized, this factor weighs only slightly, if at all, in favor of retention.

The factors concerning conflict of laws or the application of foreign law weigh in favor of dismissal. Although this court is capable of applying Delaware law, a Delaware state court is best suited to the task.

The final factor is whether it is unfair to burden citizens in an unrelated forum with jury service. Because the Delaware forum has an interest in deciding cases applying Delaware law to partnerships organized under that state's laws, it is not an unrelated forum. Since both fora have connections to this action, this factor is neutral.

Taken together, these factors weigh slightly in favor of dismissing the case and are consistent with the Clause designating a Delaware state court as the forum. The court will therefore enforce the Forum Selection Clause and dismiss the case.

### III. Conclusions and Order

For the reasons stated above, Defendants' Motions to Dismiss Pursuant to Mandatory Forum Selection Clause (Docket Entry No. 33) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 8th day of November, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE